JOHN VANN, JR.,

                Plaintiff,

v.                                               7:15-CV-0094 (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                               OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEAST       VICTORIA M. ESPOSITO, ESQ.
NEW YORK - ALBANY
  Counsel for Plaintiff
55 Colvin Ave.
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.             ROBERT R. SCHRIVER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by John Vann, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part and Defendant's motion be granted in part and denied in part.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on October 21, 1986.  (T. 141.)  He completed his GED.  (T. 156.)  Generally, Plaintiff's alleged disability consists of low back pain and diabetes.  (T. 156.)  His alleged disability onset date is July 15, 2009. (T. 77.)  He has no past relevant work.

   B.  **Procedural History**

On November 22, 2011, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 139.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 12, 2013, Plaintiff appeared before the ALJ, Barry E. Ryan.  (T. 41-70.)  On April 17, 2013, ALJ Ryan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 28-40.)  On December 17, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 33-37.)  First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since November 22, 2011. (T. 33.) Second, the ALJ found that Plaintiff had the severe impairments of morbid obesity and lumbar degenerative disc disease. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 34.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently, stand and/or walk for a total of at least two hours and sit for a total of six hours in an eight-hour workday. (T. 34.)[1] Fifth, the ALJ determined that Plaintiff had no past relevant work and there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 36-37.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in his step three determination. (Dkt. No. 11 at 15-17 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's step five determination is flawed because the RFC is not supported by substantial evidence. (*Id.* at 17-23.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ correctly found that Plaintiff's degenerative disc disease did not meet or medically

---

[1] This RFC is consistent with the requirements of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a).

equal Listing § 1.04.  (Dkt. No. 12 at 5-8 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's RFC determination is supported by substantial evidence.  (*Id.* at 8-14.)  Third, and lastly, Defendant argues the ALJ's step five determination was correct.  (*Id.* at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Listing § 1.04

If the ALJ finds that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings"). 20 C.F.R. § 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent an individual from doing any gainful activity. *Id.* at § 404.1525(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at § 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of the Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Although the ALJ may award benefits at step three, a plaintiff who

6

fails to prove his impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at § 416.920(e).

At step three, the ALJ must set forth sufficient factual or legal support for his findings. *Wood v. Colvin*, 987 F. Supp. 2d 180, 193 (N.D.N.Y. 2013) (remanding where the ALJ did not identify which, if any, of the listed impairments he considered when evaluating plaintiff's impairments or provide an explanation as to why plaintiff's impairments fell short of the criteria for a specific listed impairment). However, "the absence of an express rationale does not prevent [the court] from upholding the ALJ's [step two] determination regarding [plaintiff's] claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982), *see Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"), *see Salmini v. Comm'r Soc. Sec.,* 371 F. App'x. 109, 112-13 (2d Cir. 2010) (holding that "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination."). In addition, Plaintiff bears the burden of establishing that his impairments match a Listing or are equal in severity to a Listing. *See Naegele v.*

*Barnhart,* 433 F.Supp.2d 319, 324 (W.D.N.Y.2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

Listing § 1.04(A) provides in pertinent part:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina)[2] or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) ....

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04. In order to meet this listing, Plaintiff must establish that he suffered from "a disorder of the spine which compromises a nerve root or the spinal cord" and that this impairment produces "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *McKinney v. Astrue*, No. 05-CV-0174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008).

At step three of his determination, the ALJ concluded that Plaintiff did not have an impairment, or combination of impairments, that met or equaled a Listing. (T. 34.) The ALJ provided only the following statement in support of his determination, "[i]n

---

[2] Of note, Defendant appears to argue that this portion of the Listing requires compromise of a nerve root *and* the cauda equine. (Dkt. No. 12 at 5 [Def.'s Mem. of Law].) Defendant argues Plaintiff's impairment does not meet the Listing because his MRI made "no reference to the cauda equine, as the Listing requires." (Id. at 5-6.) This is a misreading of the Listing requirements. The cauda equina comprises the end of the spinal cord and the nerve roots below the first lumbar vertebrae ("L-1"); such spinal nerves start in the L-1 area and splay outwardly from the end of the spine, thereby resembling a horse's tail. See *Jimerson v. United States*, No. 99-CV-0954E, 2003 WL 251950, at *2 (W.D.N.Y. Jan. 13, 2003). The Listing does not require proof that a plaintiff's cauda equine nerve be compromised. The Listing clarifies that a finding that the cauda equine nerve in compromised would be included in the Listing section which requires a 'compromise of a nerve root.'

reaching this conclusion, I have considered listing 1.04, which addresses disorders of the spine." (*Id.*) Plaintiff argues that the ALJ's "summary finding" was insufficient. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].)

To be sure, the ALJ's step three determination could have been more specific in detailing his reasons; however, other portions of the ALJ's decision demonstrated that substantial evidence supported his step three determination. *See Salmini,* 371 F. App'x. at 112-13. The ALJ's discussion and analysis, at steps two and four, clearly indicated that the ALJ reviewed all of the medical evidence in the record and specifically cited evidence that supported his step three determination that Plaintiff did not meet or equal Listing § 1.04.

In his step two determination, the ALJ discussed Plaintiff's June 2010 MRI findings, which indicated severe spinal stenosis at L3-4 and moderate left foraminal stenosis at L5-S1. (T. 33.) The ALJ concluded that the medical evidence in the record noted lumber tenderness, restricted range of motion, and positive straight leg raises, that lasted for a continuous period of at least twelve months. (*Id.*)

In his step four analysis, the ALJ specifically cited medical evidence provided by David Eng, M.D. which indicated Plaintiff's motor exam showed normal tone and symmetric strength, Plaintiff had pinprick sensation, and negative straight leg raises. (T. 35.) The ALJ also relied on medical evidence supplied by consultative examiner, Sandra Boehlert, M.D., which indicated Plaintiff had a normal gait, he used no assistive devices, he had no sensory deficits or muscle atrophy, and he had full strength in his upper and lower extremities. (*Id.*) Drs. Eng and Boehlert concluded that Plaintiff had no motor loss with sensory and/or reflex loss, thus Plaintiff would not meet the criteria of

9

Lisiting § 1.04 which requires motor loss (atrophy with associated muscle weakness or muscle weakness) with sensory or reflex loss. 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition, the record did not contain evidence that Plaintiff had positive straight leg raises in both the sitting and supine position, as required by Listing § 1.04A. *Id.*

Despite the lack of analysis at step three, the ALJ's reasoning and analysis for his step three determination could easily be gleaned from his decision. The ALJ relied on the medical observations and opinions of Drs. Eng and Boehlert that Plaintiff did not meet the requirements of Listing § 1.04, namely, Plaintiff did not have the required motor loss with sensory or reflex loss, nor did Plaintiff meet the straight leg raise requirements. Therefore, although the ALJ's step three determination failed to provide an express rational, other portions of the ALJ's decision provided clear evidence that his determination was supported by substantial evidence. *See Berry,* 675 F.2d at 469.

### B. The ALJ's RFC Determination

An RFC is the most Plaintiff can still do despite his limitations. 20 C.F.R. § 416.925(a)(1). In formulating an RFC, the ALJ will base his determination on all the relevant evidence in Plaintiff's case record. *Id.*

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff essentially argues the ALJ erred in failing to adopt the opinions of Plaintiff's treating sources that Plaintiff could only sit for four hours in an eight hour workday. (Dkt. No. 11 at 19-23 [Pl.'s Mem. of Law].)

Plaintiff received his primary care from David Vigeant, RPA and Gerald Calabrese, M.D. at the Antwerp Clinic. On February 13, 2011, Mr. Vigeant completed a medical evaluation form for the St. Lawrence County Department of Social Services. (T. 198-199.) Mr. Vigeant reported that Plaintiff suffered from congenital spinal stenosis, low back pain radiating to both legs, adult onset diabetes mellitus, and hyperlipidemia. (T. 198.) He opined Plaintiff's ability to walk, stand, lift, carry, push, pull, bend, and climb stairs, was "very limited: 1-2 hrs a day." (T. 199.) Mr. Vigeant opined Plaintiff's ability to sit was "moderately limited: 3-4 hrs a day." (*Id.*) Mr. Vigeant opined Plaintiff had "no evidence of limitations" in his ability to see, hear, speak, or use his hands. (*Id.*) He opined Plaintiff had no mental limitations. (*Id.*)

Mr. Vigeant completed a second medical evaluation form on January 31, 2012. (T. 218-219.) Mr. Vigeant added morbid obesity to Plaintiff's listed medical conditions. (T. 218.) He opined that Plaintiff's ability to stand, lift, carry, push, pull, bend, and climb was "very limited: 1-2 hrs a day." (T. 219.) Mr. Vigeant opined Plaintiff's ability to walk

11

and sit was "moderately limited: 2-4 hrs a day." (*Id.*) He opined Plaintiff had no limitations in his ability to see, hear, speak and Plaintiff had no mental limitations. (*Id.*)

On May 29, 2012, Dr. Calabrese completed a "Residual Functional Capacity Evaluation" form. (T. 231-232.) Dr. Calabrese opined Plaintiff could sit for four hours in an eight hour workday, stand for two hours in an eight hour workday, and walk for two hours in an eight hours workday. (T. 231.) He opined Plaintiff could never lift or carry more than twenty pounds, but Plaintiff could frequently lift and carry up to ten pounds. (*Id.*)[3] Dr. Calabrese opined Plaintiff could never: squat, crawl, or climb. (*Id.*) He opined Plaintiff could occasionally bend. (*Id.*) Dr. Calabrese opined Plaintiff could "push/pull" up to ten pounds. (*Id.*) Dr. Calabrese opined Plaintiff had no mental limitations; no limitations regarding his ability to hear, see, or speak; and no environmental limitations. (T. 232.)

On February 10, 2012, Plaintiff saw consultative examiner, Dr. Boehlert. (T. 220-223.) On examination, Dr. Boehlert observed that Plaintiff was morbidly obese. (T. 221.) She noted he had a normal gait, could walk on his right heel and toe without difficulty; he could not walk on his left heel and toe due to pain; he could squat ¾ of the way down with more weight bearing on the right; his stance was normal; he used no assistive devices; he did not need help changing for the exam or getting on and off the exam table; and he was able to rise from a chair without difficulty. (*Id.*) Dr. Boehlert's musculoskeletal examination revealed that Plaintiff had full range of motion in his cervical spine; reduced range of motion in his lumbar spine; full range of motion in his upper extremities; full range of motion in his lower extremities; and positive straight leg

---

[3] The form includes the terms "frequently," "occasionally," and "never;" however, the form does not define these terms. (T. 231-232.)

raise on the left. (T. 222.) In a medical source statement, Dr. Boehlert opined Plaintiff had "mild limitation to exertional activity, bending, twisting of the lumbar spine, or heavy lifting." (*Id.*)

The ALJ afforded Dr. Boehlert's opinion "some weight," because it was based on a one time examination and other medical evidence in the record supported more than mild limitations for lifting, carrying, standing, and walking. (T. 35.)

The ALJ afforded "great weight" to the opinions of Plaintiff's "treatment providers" Mr. Vigeant and Dr. Calabrese. (T. 35.) However, the ALJ concluded that Mr. Vigeant's and Dr. Calabrese's opinions regarding Plaintiff's ability to sit, and postural limitations, were not supported by the overall record. (*Id.*)

The ALJ provided four reasons in support his decision to not adopt the sitting limitations imposed by Plaintiff's treating providers. First, the ALJ relied on Dr. Eng's notation that Plaintiff reported his pain improved with sitting. (T. 35.) Second, based on Dr. Eng's notations, the ALJ noted that Plaintiff's motor examination was normal, his tone was symmetric, he had pinprick sensation, and he had negative straight leg raises. (*Id.*) Third, the ALJ relied on Dr. Boehlert who "did not think [Plaintiff] had any limitations for sitting." (*Id.*) Fourth, the ALJ relied on statements made by Plaintiff to his treating providers that he felt "good," had "no complaints," and had a "completely normal" assessment one week before Dr. Calabrese provided his assessment. (*Id.*)

Overall, the ALJ's RFC limiting Plaintiff to sedentary work was supported by the opinions of Dr. Boehlert, Dr. Calabrese, and Mr. Vigeant. Although Dr. Calabrese opined Plaintiff could "never" squat, crawl, or climb, the ALJ's failure to include these postural limitations would constitute harmless error, because such limitations would not

13

necessarily preclude sedentary work. (T. 231.) Social Security Ruling 96-9p states, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, (S.S.A. July 2, 1996), 1996 WL 374185.

However, the ALJ's determination that Plaintiff could sit for six hours in an eight hour workday was not supported by substantial evidence. The ALJ cites no medical evidence that suggests Plaintiff could sit for six hours. None of Plaintiff's treating sources, nor Dr. Boehlert, concluded that Plaintiff could sit for six hours in an eight hour work day. Here, both of Plaintiff's treating sources specifically opined that Plaintiff could only sit for up to four hours in an eight hour workday. (T. 199, 219, 231.) Dr. Boehlert opined that Plaintiff had "mild limitations in exertional activities. (T. 222.) The ALJ erred in his reliance on Dr. Boehlert's opinion and the ALJ's other reasons for discounting the treating sources' sitting limitations were problematic.

First, the ALJ misread Dr. Boehlert's opinion. The ALJ stated that Dr. Boehlert determined that Plaintiff had no limitations in his ability to sit. (T.35) ("Dr. Boehlert did not think [Plaintiff] had any limitations for sitting . . ."). However, Dr. Boehlert opined Plaintiff had "mild limitation to exertional activity." (T. 222.) Sitting is classified as an exertional activity. SSR 96-9p ("Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."

14

Second, and more significantly, Dr. Boehlert's medical source statement that Plaintiff had "mild limitations to exertional activity," was too vague to draw the conclusion that Plaintiff could sit for six hours, particularly in light of treating source opinion stating otherwise. Dr. Boehlert's opinion could actually be read to support the exertional requirements of sedentary, light, or even medium work because she concluded Plaintiff had only "mild limitations to exertional activity, bending, twisting of the lumber spine, or heavy lifting." (T. 22.)

To be sure, an ALJ may rely on the opinion of a consultative examiner in formulating his RFC determination. The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel)); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

However, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate" without additional information does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other*

*grounds.* Additionally, the "use of imprecise and nebulous terms regarding functional limitations raises a red flag." *Anderson v. Colvin*, No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013). Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003) citing *Walker v. Astrue*, No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010), *report and recommendation adopted,* No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010) ("where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment"). However, here, the ALJ erred in his reliance on Dr. Boehlert's medical source statement.

Here, Dr. Boehlert's opinion that Plaintiff had "mild exertional" limitations cannot constitute substantial evidence that Plaintiff could sit for six hours in an eight hour workday because the opinion was vague, especially in light of the record which contained consistent opinions from treating sources which indicated Plaintiff could sit for only four hours; and further, the medical evidence did not establish that Plaintiff's back impairment was a "relatively little physical impairment." The case here was not such that the ALJ would be called upon to render a common sense opinion. Plaintiff's severe physical impairments, and the evidence in the record, provided substantial evidence to support an RFC determination without the need to render a common sense determination.

The ALJ's other reasons for rejecting the treating sources' sitting limitations were also problematic. The ALJ relied on Plaintiff's statements that sitting improved his pain,

he was "good," and had "no complaints." (T. 35.) However, nothing in these statements indicated an ability to sit for six hours in an eight hour workday. In a similar case the court remanded where an ALJ determined a plaintiff was capable of a full range of sedentary work, but plaintiff's treating physicians' opined plaintiff could only sit for four hours in a workday. *Stoesser v. Comm'r of Soc. Sec.,* No. 08-CV-643, 2011 WL 381949, (N.D.N.Y. Jan. 19, 2011), *report and recommendation adopted,* No. 3:08-CV-643, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011). In making his determination, the ALJ in *Stoesser* relied on a consultative examiner's opinion that plaintiff had mild restrictions for sitting and statements made by plaintiff to support his RFC determination. *Stoesser,* 2011 WL 381949, at *6-8. The court in *Stoesser* determined the ALJ erred in his reliance on the consultative examiner's opinion and further the ALJ erred in his reliance on plaintiff's statements, stating, "the question is not whether Plaintiff can sit for some period of time . . . , but whether his treating physician correctly assessed that he cannot sit for more than [four] hours in and [eight] hour workday." *Id.*, at *7. The ALJ here, like the ALJ in *Stoesser*, improperly relied on a consultative examiner's vague opinion over the plaintiff's treating sources and on plaintiff's testimony which did not provide support to discount the treating sources' opinions.

Plaintiff requests judgment with the determination that Plaintiff was disabled, or in the alternative, further proceedings. (Dkt. No. 11 at 23 [Pl.'s Mem. of Law].) Calculation of benefits is appropriate only where the "record provides persuasive proof of disability and remand for further proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). For the reasons stated herein, remand is

17

recommended for a proper RFC determination; however, the evidence is not such that it provided persuasive proof of disability.

To be sure, the ALJ's RFC determination that Plaintiff could sit for six hours in an eight hour workday was not supported by substantial evidence; however, if limited to sitting for four hours, Plaintiff would not necessarily be precluded from performing sedentary work. SSR 96-9p states that a plaintiff must be able to remain seated for "approximately" six hours of an eight hour workday to perform sedentary work. SSR 96-9p, 1996 WL 374185, at *6. SSR 83-10 states "sitting should generally total approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *5. However, "this guideline is not absolute." *McIntyre v. Colvin,* No. 3:12-CV-0318, 2013 WL 2237828, at *5 (N.D.N.Y. May 21, 2013), *aff'd,* 758 F.3d 146 (2d Cir. 2014) (recommending remand for further proceedings, not calculation of benefits, where an ALJ improperly rejected a treating source's opinion that plaintiff was limited to sitting for four hours where such a limitation would not preclude all sedentary work). "Moreover, at least in evaluating sedentary work, which Ruling 83-10 defines as requiring the ability to sit for approximately six hours out of an eight-hour work day, the Second Circuit has found the ability to sit up to four hours sufficient." *McIntyre*, 2013 WL 2237828, at *5, citing *Kornak v. Chater,* 1996 WL 622187, at *8 (E.D.N.Y May 16, 2011). A limitation to sitting for four hours in a six hour work day would most likely erode the occupational base of sedentary work and require the assistance of a vocational expert ("VE") in order to make a judgment regarding Plaintiff's ability to make an adjustment to other work. SSR 96-9p, at *7.

Therefore, remand for calculation of benefits is not warranted, but instead, remand is recommended for further proceedings.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 27, 2016

                                                  William B. Mitchell Carter
U.S. Magistrate Judge